# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAIN HUNTER,<br><br>        Petitioner,<br><br>   v.<br><br>GALAZA,<br><br>        Respondent. | 1:05-cv-1300-OWW-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS FOR UNTIMELINESS (Doc. 1)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN THIRTY DAYS<br><br>ORDER DISCHARGING ORDER TO SHOW CAUSE (Doc. 9) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The instant federal petition was filed on October 14, 2005, and raises the following claims: (1) failure to instruct the jury that Petitioner's alleged admissions should be viewed with caution; (2) erroneous introduction of opinion testimony about the credibility of the complaining witness; (3) prosecutorial misconduct in relying on facts not in evidence; and (4) the sentence violates California Penal Code section 654 and is therefore illegal. (Doc. 1, pp. 5-8).

**DISCUSSION**

A.  Preliminary Review of Petition.

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.  The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a

petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Herbst v. Cook, 260 F.3d 1039 (9th Cir.2001).

The Ninth Circuit, in Herbst v. Cook, concluded that a district court may dismiss *sua sponte* a habeas petition on statute of limitations grounds so long as the court provides the petitioner adequate notice of its intent to dismiss and an opportunity to respond. 260 F.3d at 1041-42.

    B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 , 326-29 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499-5000 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. at 326-29. As the instant petition was filed on October 14, 2005, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of  habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

///

///

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final. The AEDPA, however, is silent on how the one year limitation period affects cases where direct review concluded *before* the enactment of the AEDPA. The Ninth Circuit has held that if a petitioner whose review ended before the enactment of the AEDPA filed a habeas corpus petition within one year of the AEDPA's enactment, the Court should not dismiss the petition pursuant to § 2244(d)(1). Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283,1286 (9th Cir. 1997), overruled on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In such circumstances, the limitations period would begin to run on April 25, 1996. See, Patterson v. Stewart, 2001 WL 575465 (9th Cir. Ariz. 2001).

In this case, Petitioner was convicted on November 20, 2002. (Doc. 1, p. 2). The Petition for Review was denied by the California Supreme Court on June 23, 2004.[1] Thus, direct review concluded on September 21, 2004, when the ninety-day period for seeking review in the United States Supreme Court expired.[2] Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari in the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).

Thus, Petitioner had one year from September 21, 2004, or until September 21, 2005, within which to file his federal petition for writ of habeas corpus. See, Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001) (holding that Rule 6(a) of the Federal Rules of Civil

---

[1] Cal. R. Ct. 24(a) providing that an order of the Supreme Court denying a petition for review of a decision of a Court of Appeal becomes final when it is filed.

[2] See Sup.Ct. R. 13(1)

3

Procedure governs the calculation of statutory tolling applicable to the one year limitations period.) The instant petition was filed on October 14, 2005, some twenty-three days *after* the one-year period had expired. Thus, it appears to be untimely under the AEDPA unless Petitioner is entitled either to statutory or equitable tolling.

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In this case, Petitioner did not seek any collateral review in the state courts prior to filing his federal petition for writ of habeas corpus. Thus, he is not entitled to statutory tolling.

C. Petitioner Is Not Entitled To Equitable Tolling For His Attorney's Negligence.

The limitations period is also subject to equitable tolling, but only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, ___U.S.___, 127 S.Ct. 1079, 1085 (2007) (quoting Pace v. DiGuglielmo, 544 U.S.408, 418 (2005)). Equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1007 (9th Cir. 1999), and "the "threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)(quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)); see Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d at 1288 (noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles, 187 F.3d at 1107).

In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." The Ninth Circuit reaffirmed this rule in Espinoza-Matthews v.

4

California, 432 F.3d 1021, 1026 (9th Cir. 2005). In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." Id.

At the same time, the Ninth Circuit noted the United States Supreme Court's decision in Pace, 125 S.Ct. at 1814, in which the equitable tolling standard is framed "in less absolute terms":

> "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

Espinoza-Matthews, 432 F.3d at 1026, n. 5, quoting Pace, 125 S.Ct. at 1814. The Ninth Circuit declined to decide whether Pace had "lowered the bar somewhat" because the Ninth Circuit concluded that petitioner had met the "more demanding" articulation found in the Ninth Circuit case law. Id. at 1027.

Regardless of the standard applied, it is clear that ordinary negligence on the part of counsel is *not* an extraordinary circumstance warranting equitable tolling. See, Lawrence, 127 S.Ct. at 1085 ("Attorney miscalculation [of AEDPA's limitations period] is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001)(attorney miscalculation and "negligence in general" not sufficient to warrant equitable tolling).

However, "where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations." Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir. 2003). In that case, a state prisoner's mother hired a private lawyer to file a federal petition for writ of habeas corpus on behalf of her son. The attorney was retained nearly a full year before the deadline for filing the petition. Notwithstanding that fact, the attorney did nothing throughout that year, despite several letters from the prisoner and his mother inquiring about the status of the habeas petition. The mother also contacted the state bar association and filed grievances against the attorney before finally terminating the attorney-client relationship. Id. at 798. The attorney never filed the petition, the AEDPA deadline passed, and only then did the attorney contact the prisoner's mother to express

5

regret for his procrastination and to return the retainer. It was not until three months after the prisoner's mother had requested it, over two months after the AEDPA deadline had passed, and after disciplinary proceedings had been commenced against the attorney that he returned the prisoner's file to him. Id. The prisoner finally filed his petition some 226 days after the limitations period had expired, but the district court dismissed it as untimely. Id. at 799.

The Ninth Circuit reversed the district court, holding that Spitsyn's attorney's conduct was "sufficiently egregious to justify equitable tolling" of AEDPA's one-year limitations period. Id. at 799. The Court noted that Spitsyn's attorney did not return the case file to him until after the limitations period had expired, and thus, it was "unrealistic to expect Spitsyn to prepare and file a meaningful petition on his own within the limitations period." Id. Similarly, although the prisoner and his mother could have retained another lawyer, they made "reasonable attempts to contact" the attorney and "to urge him to file the petition, which he had been hired and already paid to do."

Here, Petitioner alleges that his "appellate attorney robbed me of any opportunity to prepare and file collateral relief petitions by negligently withholding from me the fact that the st. supreme ct. denied my petition for review." (Doc. 1, p. 4). Petitioner has submitted correspondence from his court-appointed attorney indicating that the attorney contacted him by mail on April 21, 2004, to explain that the Court of Appeal had affirmed his conviction, that the attorney was filing a Petition for Review in the California Supreme Court, and that it should make a decision with sixty to ninety days. (Doc. 12, Exh. 1). The attorney wrote again to Petitioner on August 16, 2005, to explain that the Petition for Review had been denied the previous year and that Petitioner had until September 21, 2005, within which to timely file his federal habeas petition. (Doc. 12, Exh. 2). Petitioner has indicated in his declaration that because of his transfer from one prison facility to another, he did not receive the attorney's letter until September 9, 2005. (Doc. 12, Exh. 4). Petitioner then apparently filed a request for extension of time with this Court, which was returned with the explanation, dated September 16, 2005, that the Court cannot grant an extension of time to file the petition. (Doc. 12, Exh. 5). Petitioner's appellate counsel has filed with the Court a declaration in which he acknowledges

that, although the Petition for Review was denied on June 23, 2004, his computer records contain no indicated that he notified Petitioner of that fact. (Doc. 8).³

The issue then is whether, under these circumstances, the attorney's misconduct was sufficiently egregious to trigger equitable tolling. The Court concludes that the attorney's conduct is simple negligence and does not rise to the level of egregious misconduct necessary to justify equitable tolling. Several factors distinguish this case from Spitsyn. First, Spitsyn's attorney was hired for the express purpose of filing the federal habeas petition, for which he was paid in advance, yet he did nothing until after the limitations period had expired. By contrast, in this case, Petitioner's attorney was appointed only to represent Petitioner in his state court appeal, which he did, to all indications, with complete competence; he was not hired to file a federal habeas petition for Petitioner or, for that matter, to advise Petitioner about the federal habeas process. It is undisputed that filing the federal petition was always the responsibility of Petitioner.

Second, Spitsyn and his mother showed reasonable diligence in repeatedly contacting the attorney by mail and, when no response was forthcoming, contacting the bar association and filing grievances for the attorney's misconduct. Here, by contrast, it does not appear that Petitioner did anything from April 2004 until September 2005 to verify the status of his Petition for Review with the California Supreme Court or with his attorney. This is true despite the fact that Petitioner's counsel advised him in April 2004 that the California Supreme Court should

---

³The Court is satisfied that the record on this issue has been fully developed. Petitioner has indicated that he relied on appointed counsel during the pendency of the Petition for Review and does not indicate that he did anything on his own regarding either his state appeal or the federal habeas petition until after receiving counsel's letter on September 9, 2005. (Doc. 12, p. 2; Doc. 11, pp. 2-6). Thus, further development of the record regarding possible efforts by Petitioner to contact his attorney seem unnecessary. The only fact question that remains unclear is whether appointed counsel sent Petitioner the transcripts in the case at the time of the April 2004 letter or whether he did so with the August 2005 letter. This ambiguity, however, does not, in the Court's view, require additional development of the record. Petitioner would have received copies of his attorney's Opening and Reply Briefs in the Court of Appeal, as well as a copy of the Petition for Review. Those documents, as well as the legal arguments and citations to the record contained therein, were therefore available to Petitioner throughout the AEDPA limitations period, and Petitioner could have used those documents to prepare and file his federal petition. Although, theoretically, Petitioner might have wished to include additional issues that a review of the transcripts might have revealed, it appears from the instant petition that this is not the case in fact. Petitioner's tardy petition includes the same four exhausted issues that were included in his direct state appeal. Therefore, it appears that it is only Petitioner's lack of knowledge as to the finality of his state appeal, not his potential lack of access to the transcripts of that appeal, that could reasonably be argued to be a factor in his late filing of the instant petition.

decide the Petition for Review within sixty to ninety days, i.e., or by July 2004. That Petitioner did nothing for over a year after July 2004, and then only when contacted by his former attorney, demonstrates a lack of diligence on Petitioner's part that clearly distinguishes his case from Spitsyn.

Finally, Spitsyn's attorney allowed the limitations period to expire before responding to either the prisoner or his mother, thus foreclosing any possibility whatsoever that Spitsyn could file a timely petition. Here, again by contrast, assuming that Petitioner's allegation is correct that he only received the attorney's letter on September 9, 2005, at that point he still had twelve days to file his petition. Although such a time constraint undoubtedly places great demands on a pro se petitioner unskilled in the law, the Court, under those circumstances, cannot say that twelve days would be an unreasonable time for a pro se litigant to fill out the form petition and file it in a timely manner, leaving open the possibility of promptly seeking leave of Court to amend with a fuller statement of his claims when he had more time.

While it is unfortunate that Petitioner's appellate counsel failed to inform Petitioner of the California Supreme Court's denial of his Petition for Review, that fact, by itself, cannot constitute sufficient grounds to equitably toll the AEDPA's one-year limitation period. As indicated, if Petitioner "lacks diligence" in pursing his claims, he cannot avail himself of equitable tolling under the AEDPA. E.g., Pace, 125 S.Ct. at 1814. Even assuming, arguendo, that counsel's negligence constitutes an "extraordinary circumstance" beyond Petitioner's control, it did not, by itself, *cause* the later filing. This is so because counsel's negligence does not relieve Petitioner of his own responsibility to be aware of and to know what was happening in his direct appeal or to take reasonable steps to file his federal habeas petition with one year of the conclusion of the direct appeal.

As mentioned in the Order to Show Cause (Doc. 9), it appears to the Court that, essentially, Petitioner did nothing to determine the status of his direct appeal for most or all of the one-year AEDPA limitations period, until he finally determined that his Petition for Review had been denied the previous year. Such delay by Petitioner negates any contention that he acted with reasonable diligence, or that his appellate counsel's failure to send him a timely letter was

8

the "but-for" cause of his late filing, <u>Allen v. Lewis</u>, 255 F.3d at 801, or that appellate counsel's conduct had made it "impossible to file a petition on time." (<u>Beeler</u>), 128 F.3d at 1288.

In sum, although it certainly could be argued that Petitioner's counsel was negligent in failing to notify Petitioner of the denial of his Petition for Review and the commencement of AEDPA's one-year limitations period, that negligence appears to be "ordinary" negligence, not the "egregious" negligence required to trigger equitable tolling. <u>Spitsyn</u>, 345 F.3d at 800. This is so because, unlike <u>Spitsyn</u>, Petitioner could easily have inquired of the California Supreme Court regarding the status of his direct appeal at any time during the one-year period. That he waited to do so until the year was almost over and his federal petition was due places responsibility for the late filing on Petitioner's shoulders, not those of his appellate counsel. Thus, it does not appear to the Court that Petitioner is entitled to equitable tolling based on appellate counsel's failure to inform Petitioner of the denial of his Petition for Review.

## ORDER

Accordingly, the ORDER to SHOW CAUSE filed on April 10, 2007 (Doc. 9), is DISCHARGED.

## RECOMMENDATIONS

For the foregoing reasons, the Court RECOMMENDS that the Petition (Doc. 1), be DISMISSED for violating the limitations period of 28 U.S.C. § 2244(d).

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court , Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The District Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the

///

specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 3, 2007**                                    **/s/ Theresa A. Goldner**
                                                         UNITED STATES MAGISTRATE JUDGE